```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

| | |
|---|---|
| **CORNERSTONE SYSTEMS, INC.,** ) ) **Plaintiff/** ) **Counter-Defendant,** ) ) v. ) ) **CORNERSTONE LOGISTICS USA L.P.,** ) ) **Defendant/** ) **Counter-Plaintiff.** ) ) | No. 09-2361 |

**ORDER DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS**

Before the Court are Defendant Cornerstone Logistics USA L.P.'s ("Cornerstone Logistics") March 23, 2010, Motion to Stay Proceedings and April 21, 2010, Motion for Leave to File a Reply to Plaintiff's Response and Supplemental Brief. (See Dkt. Nos. 33, 43.) Plaintiff Cornerstone Systems, Inc. ("CSI") filed a response in opposition on April 9, 2010, and a supplemental memorandum in opposition on April 15, 2010. (See Dkt. Nos. 38, 42.) Defendant requests that the Court stay all proceedings in the present matter to allow the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office to adjudicate the validity of the trademark at issue. (Defendant/Counter-Plaintiff's Motion to Stay Proceedings, Dkt.

No. 33, at 5.) ("Def's Mot.")  Cornerstone Logistics' Motion to File a Reply is GRANTED.  Because a stay would not advance judicial economy and the primary jurisdiction doctrine does not counsel that a stay is necessary, the Motion for a Stay is DENIED.

CSI is a Memphis, Tennessee, based corporation that filed suit against Cornerstone Logistics, a New York limited partnership, on June 11, 2009, alleging that CSI had registered the standard character mark CORNERSTONE, United States Trademark Registration No. 3,322,601, with the Patent and Trademark Office on October 30, 2007.  (Compl. ¶ 9.)  CSI has employed the CORNERSTONE mark in relation to its transportation logistics business since at least 1997, thereby allegedly acquiring common law rights in the mark.  (Id. ¶ 8.)  Plaintiff alleges that Cornerstone Logistics has infringed its trademark by using the term CORNERSTONE in the sale of its own transportation logistics services.  (Id. ¶ 13.)  Cornerstone Logistics' use of CSI's mark is "likely to cause confusion, to cause mistake, and to deceive consumers and others as to the source, nature, and quality of the goods and services offered by Defendant."  (Id. ¶ 17.)  Plaintiff's suit seeks damages for trademark infringement, 15 U.S.C. § 1114(1); common law trade-name infringement; statutory unfair competition, 15 U.S.C. § 1125; false designation of origin, 15 U.S.C. § 1125(a); violation of the Tennessee

Trademark Act, Tenn. Code Ann. § 47-25-513(a)-(b); violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104(b)(1)-(3), (5), (8), (27); common law unfair competition; unjust enrichment; and violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A). (Compl. ¶¶ 19-59.)  CSI seeks damages, including triple Defendant's profits gained from its violations or Plaintiff's damages, whichever is greater; costs; attorneys' fees; and injunctive relief. (Id. ¶¶ 61-67.)

Defendant argues that the Court should stay all proceedings until the TTAB renders its decision in related proceedings that will determine the validity of the CORNERSTONE mark.  (Def's Mot. at 4.)  Although Defendant initially argued that it had filed the petition with the TTAB to cancel Plaintiff's mark (see id. at 4), Defendant has clarified that a related Canadian entity, CL LP, filed the administrative action.[1]  (Defendant's Memorandum in Support of Motion for Leave to File Reply to Plaintiff's Supplemental Brief, Dkt. No. 43, at 5.) ("Def's Memo")  Defendant also raises in its reply brief, for the first time, the issue of another proceeding before the TTAB concerning the CORNERSTONE mark.  Cornerstone Transportation, Inc. has filed a petition to cancel CSI's mark.  (Id. at 3.)  Therefore,

---

[1] CL LP and Defendant "have different intermediate owners" but are ultimately "commonly owned by a publicly traded Canadian company." (Def's Memo at 5-6.)

3

Defendant argues that this Court should stay all proceedings because any decision by the TTAB would necessarily narrow the issues for adjudication and a stay would prejudice neither party. (Id. at 6.)

Left unmentioned in Defendant's argument is the doctrine it seeks to invoke to obtain a stay of the proceedings: primary jurisdiction. The doctrine of primary jurisdiction applies where the parties have presented a judicially cognizable claim, but "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." United States v. W. Pac. R.R., 352 U.S. 59, 64 (1956). The doctrine is intended to ensure "uniformity and consistency in the regulation of business entrusted to a particular agency" and gain "the expert and specialized knowledge" of the designated agency before judicial consideration proceeds. Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 303-04 (1976); W. Pac. R.R., 352 U.S. at 64. However, the doctrine is more "a set of precedents that guide courts in deciding when an issue should be resolved in the first instance by an agency" than a strict set of rules. PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 80 (1st Cir. 1996). Primary jurisdiction most readily applies where the issue to be determined is highly technical, requires expert advice that is within the agency's area of competence, and courts would review

4

any agency determination under a deferential standard of review. See PHC, 75 F.3d at 80; Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 851-52 (2d Cir. 1988); Am. Cyanamid Co. v. Campagna Par La Farmacie in Italia S.P.A., 678 F. Supp. 1049, 1055 (S.D.N.Y. 1987), aff'd, 847 F.2d 53 (2d Cir. 1988).

The doctrine of primary jurisdiction is generally inapplicable to proceedings before the TTAB. W & G Tenn. Imps., Inc. v. Esselte Pendaflex Corp., 769 F. Supp. 264, 265 (M.D. Tenn. 1991). First, the Commissioner of the Patent and Trademark Office has disavowed any notion that the TTAB has particular expertise in mark disputes also involving claims of infringement. See Other Tel. Co. v. Conn. Nat'l Tel. Co., 181 U.S.P.Q. 779, 782 (Comm'r Pat. & T'mark 1974). The TTAB's rules provide that, whenever "parties to a pending case are engaged in a civil action . . . which may have a bearing on the case, proceedings before the Board may be suspended," 37 C.F.R. § 2.117(a), and the TTAB regularly stays its proceedings until related district court actions conclude. See, e.g., PHC, 75 F.3d at 78 (noting that the TTAB had suspended its proceedings even though the federal court action was filed after the TTAB proceedings began); Goya, 846 F.2d at 850 (same). Indeed, the standards applied, such as whether consumers are likely to be confused, are familiar to courts. No specialized knowledge is necessary. See Nader, 426 U.S. at 305-06 (Where the standard to

5

be applied is "within the conventional competence of the courts," primary jurisdiction does not apply because "the judgment of a technically expert body is not likely to be helpful.").

Second, Congress has not directed that federal courts show any special solicitude for the rulings of the TTAB. A party aggrieved by the TTAB's findings may file an action in any United States District Court where venue is proper. 15 U.S.C. § 1071(b)(1). The district court reviews the matter de novo and may hear new evidence not presented to the TTAB. Kellogg Co. v. Toucan Golf, Inc., 337 F.3d 616, 622-23 (6th Cir. 2003). Thus, even if the Court were to stay proceedings in favor of those before the TTAB, the Court would not be bound by the TTAB's findings. Id.

Third, the TTAB cannot give the parties the full relief that they seek. The TTAB can only determine the validity of the trademark, and that determination may be challenged in court without any presumption that the TTAB was correct. See id. The TTAB has no authority to determine whether the trademark was infringed or to adjudicate the related state-law causes of action, like those under the Tennessee Trademark Act and Tennessee Consumer Protection Act, that Plaintiff has asserted in the present matter. See Enterprise Rent-A-Car Co. v. Advantage Rent-A-Car, Inc., 62 U.S.P.Q.2d 1857, 1858 (T.T.A.B.

2002) (noting that the TTAB has no jurisdiction to hear state-law trademark dilution claims); Paramount Pictures Corp. v. White, 31 U.S.P.Q.2d 1768, 1771 n.5 (T.T.A.B. 1994) ("The Board has no jurisdiction over claims of trademark infringement and unfair competition. The proper forum for such claims is a civil action."). The TTAB is also unable to grant injunctive relief. PHC, 75 F.3d at 80. The conduct that truly harms, the infringement, can only be rectified by resort to district court. Am. Cyanamid Co., 678 F. Supp. at 1055.

Fourth, because infringement is an ongoing harm, "there is often some urgency" to resolve the claims. PHC, 75 F.3d at 80. Staying litigation while waiting for the non-binding decision of the TTAB allows the offending conduct to continue and potential irreparable injury to remain unabated. W & G Tenn. Imps., 769 F. Supp. at 266. Thus, particularly where the matter in controversy includes claims for infringement, the doctrine of primary jurisdiction is inapplicable, and courts should adjudicate pending suits without pausing for further administrative action. Id. at 265; see also PHC, 75 F.3d at 81; Goya, 846 F.2d at 853-54.

Although the cases cited in this Order address the situation where the parties before the court and TTAB are the same, they apply all the more to the present situation. If a court should not defer to the TTAB when the parties are the

7

same, it should not defer where the parties differ and there is even less threat of interfering with the TTAB's work. The doctrine of primary jurisdiction is inapplicable to the present case, and the Motion to Stay is DENIED.

So ordered this 23rd day of June, 2010.

>                         s/ Samuel H. Mays, Jr.
>                         SAMUEL H. MAYS, JR.
>                         UNITED STATES DISTRICT JUDGE